FILED IN CLERKS OFFICE

JAN 5 '26 ∞3:36 USDC MA

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**ARTHUR BURNHAM,**
Plaintiff,

**UMASS MEMORIAL MEDICAL CENTER, INC.,**
Defendant.

Civil Action No. _____

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

JURY TRIAL DEMANDED

---

## I. INTRODUCTION

1. This is a civil rights action arising from Defendant UMass Memorial Medical Center's ("UMass" or "Defendant") prolonged and deliberate refusal to provide Plaintiff Arthur Burnham ("Plaintiff" or "Mr. Burnham"), a paraplegic individual, with a medically necessary powered wheelchair and equal access to hospital and psychiatric services.

2. Over the course of more than one year, Defendant repeatedly misrepresented federal law, concealed its inpatient durable medical equipment ("DME") obligations, and conditioned Plaintiff's access to basic medical equipment on discharge, institutionalization, or cost considerations.

3. Defendant's conduct caused catastrophic physical injuries, including repeated foot trauma and toe amputations, severe emotional distress, prolonged hospitalization, unnecessary institutionalization, suicidal crises, and denial of psychiatric care solely because of Plaintiff's disability.

4. Defendant's actions violate Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, Section 1557 of the Affordable Care Act ("ACA"), and the integration mandate articulated in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

1

1

5. Plaintiff seeks compensatory damages, declaratory relief, and a permanent injunction requiring Defendant to immediately provide a medically appropriate powered wheelchair and to cease discriminatory policies and practices.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiff's claims arise under:

   o The Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.;
   o Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;
   o Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116.

8. This Court has supplemental jurisdiction over Plaintiff's state-law claim under M.G.L. c. 151B pursuant to 28 U.S.C. § 1367.

9. Plaintiff will satisfy the presentment requirement of M.G.L. c. 151B, § 5 by filing a verified complaint with the Massachusetts Commission Against Discrimination and seeks a temporary stay of that claim during the statutory 90-day period.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Massachusetts and Defendant conducts substantial business in this District.

## III. PARTIES

11. Plaintiff Arthur Burnham is an adult resident of Massachusetts and an individual with a disability, including paraplegia and mobility impairments requiring a powered wheelchair.

12. Defendant UMass Memorial Medical Center, Inc. is a Massachusetts healthcare corporation operating hospitals and inpatient psychiatric units and receives extensive federal financial assistance, including Medicare and Medicaid (MassHealth) funds.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Disability, Coverage, and Medical Necessity

13. Plaintiff Arthur Burnham is a paraplegic from the chest down and is substantially limited in major life activities including walking, standing, transferring, self-care, and mobility.

14. Plaintiff requires a medically appropriate powered wheelchair to safely access hospital facilities, participate in inpatient medical and psychiatric services, and live in the community without risk of serious injury.

15. Plaintiff is enrolled in MassHealth Standard, which covers medically necessary durable medical equipment, including powered wheelchairs, when supported by a clinical evaluation and physician prescription.

16. Defendant was aware at all relevant times that Plaintiff was a MassHealth Standard beneficiary and that MassHealth would pay for a medically necessary powered wheelchair if Defendant initiated the required inpatient evaluation and order.

17. Despite this knowledge, Defendant repeatedly refused to initiate the required physical therapy evaluation and physician prescription during Plaintiff's inpatient admissions, falsely asserting that a powered wheelchair could only be obtained after discharge or through placement in a skilled nursing facility.

### B. August 2024 Injury and Initial Inpatient Refusal

18. On August 2, 2024, Plaintiff's foot became pinned under his unsafe wheelchair, causing serious injury and requiring ambulance transport to UMass Memorial Medical Center. See MyChart record dated 08/02/2024 (Exhibit 1).

19. Plaintiff was admitted as an inpatient and informed treating physicians and staff that his wheelchair was unsafe, damaged, and causing repeated injuries, and that he needed a new powered wheelchair through insurance with a physician's prescription.

20. While inpatient, Plaintiff required a functioning powered wheelchair as medically necessary DME to navigate the hospital, access services, and avoid further injury.

21. Defendant's social workers and case managers repeatedly told Plaintiff that he was ineligible to receive a powered wheelchair while inpatient and that he would first need to be discharged or agree to placement in a skilled nursing facility.

22. These statements were misleading and discriminatory, as Defendant failed to disclose the existence of an inpatient pathway requiring only a physical therapy evaluation and physician order for medically necessary DME.

23. Defendant's refusal was based on cost-shifting and administrative convenience rather than medical judgment or insurance eligibility and denied Plaintiff equal access to covered inpatient services.

C. Unsafe Discharges, Amputation, and Continued Denial

24. Defendant pressured Plaintiff to discharge to a skilled nursing facility as a condition of obtaining a wheelchair, contrary to federal disability law and the integration mandate.

25. Plaintiff was discharged into the community without safe mobility equipment, forcing him to tie his legs to his wheelchair to prevent dragging, which caused severe injuries documented by wound care nurses (Exhibit 7).

26. On December 20, 2024, while traveling through Logan Airport, Plaintiff's foot became trapped and dragged until bone was exposed.

27. As a direct result of Defendant's continued refusal to provide a safe wheelchair, two of Plaintiff's toes were amputated. See photograph and medical records (Exhibit 2).

28. On December 27, 2024, treating physician Aida Taku, MD documented that Plaintiff needed a better wheelchair to prevent further injury. See MyChart record dated 12/27/2024 (Exhibit 3) (documenting Defendant's awareness that Plaintiff's wheelchair was causing ongoing injury and that no corrective equipment was provided)..

D. Psychiatric Exclusion Based on Disability (March 2025)

29.     On March 5, 2025, Plaintiff sought emergency mental health services due to severe distress caused by ongoing physical injuries, denial of equipment, and fear of institutionalization.

30.     Plaintiff was placed on a Section 12 hold while an inpatient psychiatric bed search was conducted.

31.     Multiple MyChart entries documented that Plaintiff was declined from inpatient psychiatric units and facilities because of his paraplegia and need for a powered wheelchair, stating that the bed search was "complicated by medical complexity" and "declined due to acuity." See MyChart records dated 03/05/2025, 03/06/2025, and 03/10/2025 (Exhibits 4–6).

32.     These records constitute direct evidence that Defendant excluded Plaintiff from psychiatric services solely because of his disability.

E. Unauthorized Photograph, Humiliation, and Emotional Abuse

33.     On or about September 29, 2025, while Plaintiff was dependent on staff for hygiene and care, a UMass nurse intentionally photographed Plaintiff's unclothed buttocks and anus without his consent.

34.     The photograph depicts the nurse physically holding open Plaintiff's buttocks to expose the anus. There were no wounds to the anus and no medical need to expose or photograph that area; Plaintiff's documented wounds were located on the sacrum, not the anus.

35.     The medical record does not reflect that Plaintiff's buttocks required cleaning, that fecal contamination required documentation, or that exposure of the anus served any clinical or wound-care purpose.

36.     The image was uploaded to Plaintiff's MyChart medical record, making it accessible to numerous staff members not involved in his treatment. See MyChart record dated 09/29/2025 (Exhibit 8).

37.     This conduct was unnecessary, humiliating, and unrelated to Plaintiff's medical care, and constitutes direct evidence of intentional

discrimination, abuse of power, and discriminatory animus toward Plaintiff as a disabled individual.

F. November–December 2025 DME Refusal and Escalation

38.    On October 8, 2025, Plaintiff's wheelchair completely stopped functioning and would not take a charge.

39.    On October 8, 2025, Dr. Rama Takillapati documented: "Patient requesting new wheelchair as current one does not hold his legs— social worker/CM informed to pursue it." See MyChart records dated 10/08/2025 (Exhibits 9–10).

40.    Defendant's social workers and case managers never pursued Plaintiff's request for medical equipment.

41.    On November 20, 2025, Dr. Takillapati documented that Plaintiff wanted a prescription for a new wheelchair from National Seating and Mobility and that social work and case management advised it must be done after discharge because "insurance only pays outpatient." See MyChart record dated 11/20/2025 (Exhibit 11).

42.    On November 24, 2025, social worker Molly documented: "The electric wheelchair would be fixed or replaced in the community. It cannot be done while inpatient at UMass." See MyChart record dated 11/24/2025 (Exhibit 12).

43.    These statements constitute direct evidence that Defendant intentionally refused to provide medically necessary DME during inpatient care and attempted to shift its legal obligations to the outpatient setting.

G. Risk Management Escalation and Weaponization of Conservatorship

44.    On December 2, 2025, Defendant convened a multidisciplinary meeting including risk management and the Office of General Counsel to address Plaintiff's care and disposition. See MyChart record dated 12/02/2025 (Exhibit 13).

45.    On December 17, 2025, during Plaintiff's inpatient hospitalization, Defendant's social worker asked Plaintiff whether he would consent to having his brother appointed as his legal guardian.

Plaintiff clearly and unequivocally refused and stated that he did not consent to any form of guardianship or conservatorship.

46.     Following Plaintiff's refusal, Defendant escalated coercive conduct. Plaintiff was restricted from freely communicating with others and was not permitted to use the telephone for an extended period of time, under the asserted pretext of a "Section 12," despite the absence of any judicial determination of incapacity or appointment of a guardian.

47.     During this same period, Defendant's social worker pressured Plaintiff to provide contact information for family members and informed Plaintiff that Defendant was filing paperwork in Worcester Probate and Family Court to seek appointment of a guardian over Plaintiff. These actions were undertaken without Plaintiff's consent and outside any lawful guardianship proceeding.

48.     Defendant also pressured Plaintiff's brother to provide the telephone numbers and contact information of Plaintiff's other siblings. Plaintiff's brother declined and stated that he was not comfortable providing that information. This conduct reflected Defendant's attempt to expand control over Plaintiff through family pressure rather than through lawful medical or judicial processes.

49.     Defendant's conduct constituted an escalation of prior threats of conservatorship and was undertaken in retaliation for Plaintiff's refusal to surrender legal autonomy, his continued requests for medically necessary equipment, and his assertion of rights under federal disability law. These actions placed Plaintiff at imminent risk of unlawful loss of personal autonomy and coercive institutional control.

H. Olmstead and the Integration Mandate

50.     Federal disability law requires public entities and recipients of federal funds to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

51.   Defendant repeatedly pressured Plaintiff to accept placement in a skilled nursing facility or other institutional setting as a condition of obtaining medically necessary mobility equipment, despite Plaintiff's ability and desire to live in the community with appropriate supports.

52.   Defendant's refusal to provide a powered wheelchair during inpatient care, coupled with threats or implications of conservatorship and institutional placement, effectively forced Plaintiff to choose between unnecessary institutionalization and unsafe discharge without essential equipment.

53.   These actions violate the integration mandate recognized in Olmstead v. L.C., 527 U.S. 581 (1999), by unjustifiably segregating Plaintiff and placing him at serious risk of institutionalization solely because of his disability.

54.   Defendant's conduct deprived Plaintiff of the opportunity to receive services in the most integrated setting appropriate and caused concrete harm, including physical injury, psychiatric destabilization, and loss of personal autonomy.

## V. EXHIBITS

Exhibit 1 – 08/02/2024 MyChart admission record documenting Plaintiff's foot injury caused by wheelchair malfunction and resulting inpatient hospitalization.

Exhibit 2 – Photograph and medical records documenting amputation of two toes following wheelchair-related trauma.

Exhibit 3 – 12/27/2024 MyChart physician progress note documenting Defendant's contemporaneous knowledge that Plaintiff's wheelchair was causing ongoing injury to his feet and that no corrective equipment was provided.

Exhibit 4 – 03/05/2025 MyChart psychiatric progress note documenting denial of inpatient psychiatric admission explicitly citing paraplegia and medical acuity.

Exhibit 5 – 03/06/2025 MyChart psychiatric progress note documenting referral to 46 inpatient psychiatric facilities and repeated denials explicitly citing paraplegia, wheelchair dependence, and medical complexity.

Exhibit 6 – 03/10/2025 MyChart psychiatric progress note documenting continued refusal of inpatient psychiatric admission due to medical complexity and acuity despite repeated referrals.

Exhibit 7 – 09/29/2025 wound care photographs and MyChart nursing consultation note documenting severe leg and foot wounds, including amputations, medically attributed to trauma caused by Plaintiff's unsafe wheelchair and dragging of limbs due to lack of appropriate mobility equipment.

Exhibit 8 – 09/29/2025 MyChart image documenting unauthorized photograph of Plaintiff's unclothed body uploaded to the medical record without clinical justification or consent.

Exhibit 9 – Reserved / placeholder – no MyChart record produced by Defendant for this exhibit number.

Exhibit 10 – 10/07/2025 MyChart physician progress note documenting that Plaintiff's wheelchair did not hold his legs and that social work and case management were notified to pursue replacement.

Exhibit 11 – 11/20/2025 MyChart physician progress note documenting Defendant's refusal to initiate inpatient wheelchair evaluation or prescription and Defendant's position that replacement could only occur after discharge as an outpatient.

Exhibit 12 – 11/24/2025 MyChart social work plan of care documenting Defendant's written position that powered wheelchairs cannot be fixed or replaced during inpatient hospitalization despite Plaintiff's request for a PT evaluation and safe community discharge.

Exhibit 13 – 12/02/2025 MyChart social work plan of care documenting multidisciplinary escalation involving risk management and the Office of General Counsel regarding Plaintiff's disposition and Defendant's continued refusal to provide medically necessary equipment.

## VI. CLAIMS FOR RELIEF

Count I – Americans with Disabilities Act (ADA)

42 U.S.C. §§ 12101 et seq. (Title III for hospital as a place of public accommodation)

55. Plaintiff realleges and incorporates by reference paragraphs 1 through 53.

56. Plaintiff is a qualified individual with a disability within the meaning of the ADA, including paraplegia and severe mobility impairment requiring a powered wheelchair.

57. Defendant owns, operates, and controls places of public accommodation and/or programs and services subject to the ADA, including inpatient medical and psychiatric services.

58. Plaintiff was eligible for and sought to fully participate in Defendant's programs and services.

59. Defendant intentionally discriminated against Plaintiff on the basis of disability by denying him full and equal enjoyment of its services, including by:

a. Refusing to provide medically necessary inpatient durable medical equipment, including a powered wheelchair.
b. Misrepresenting that federal law and MassHealth prohibited provision of a powered wheelchair during inpatient hospitalization.
c. Conditioning access to mobility equipment and safe discharge on placement in a skilled nursing facility.
d. Excluding Plaintiff from inpatient psychiatric services due to his paraplegia and wheelchair needs.
e. Subjecting Plaintiff to degrading, humiliating, and non-therapeutic treatment, including the unauthorized exposure and photographing of his body.

59. Defendant failed to make reasonable modifications in policies, practices, and procedures necessary to afford Plaintiff equal access to its services.

60.     Defendant's conduct constituted intentional discrimination and deliberate indifference, causing Plaintiff physical injury, emotional distress, loss of dignity, and risk of further harm.

Count II – Section 504 of the Rehabilitation Act

29 U.S.C. § 794

61.     Plaintiff realleges and incorporates by reference paragraphs 1 through 60.

62.     Plaintiff is an individual with a disability within the meaning of Section 504.

63.     Defendant receives federal financial assistance, including Medicare and Medicaid (MassHealth) funds.

64.     Defendant excluded Plaintiff from participation in, denied him the benefits of, and subjected him to discrimination under its programs and activities solely by reason of his disability.

65.     Defendant's documented refusals to provide inpatient DME, exclusion from psychiatric care based on "medical complexity," and degrading treatment constitute direct evidence of discrimination.

66.     Defendant acted intentionally and with deliberate indifference to Plaintiff's federally protected rights.

Count III – Section 1557 of the Affordable Care Act

42 U.S.C. § 18116

Plaintiff realleges and incorporates by reference paragraphs 1 through 66.

67.     Defendant operates health programs and activities receiving federal financial assistance.

68.     Defendant discriminated against Plaintiff on the basis of disability by denying medically necessary equipment, excluding him from psychiatric services, and subjecting him to humiliating and abusive treatment.

69.     Defendant's conduct caused Plaintiff physical harm, emotional distress, and denial of meaningful access to healthcare.

Count IV – Invasion of Privacy (Massachusetts Common Law)

70.     Plaintiff realleges and incorporates by reference paragraphs 1 through 69.

71.     Defendant, through its employee, intentionally intruded upon Plaintiff's physical solitude and private affairs by exposing and photographing Plaintiff's unclothed buttocks and anus without consent.

72.     The intrusion served no legitimate medical purpose, as Plaintiff's wounds were located on the sacrum and did not require exposure or photographing of the anus.

73.     The intrusion was highly offensive to a reasonable person and was facilitated by Plaintiff's physical dependence and inability to protect his bodily privacy.

74.     Defendant further invaded Plaintiff's privacy by uploading and disseminating the image within his medical record, making it accessible to numerous staff members without medical necessity.

75.     Plaintiff suffered humiliation, emotional distress, and loss of dignity as a result.

Count V – Intentional Infliction of Emotional Distress

Plaintiff realleges and incorporates by reference paragraphs 1 through 75.

76.     Defendant engaged in extreme and outrageous conduct by repeatedly denying medically necessary equipment, humiliating Plaintiff, excluding him from psychiatric care, threatening institutionalization, and exposing his body without consent.

77.     Defendant intended to cause, or recklessly disregarded the likelihood of causing, Plaintiff severe emotional distress.

78.     Plaintiff suffered severe emotional distress, psychiatric destabilization, and physical manifestations of trauma as a direct result of Defendant's conduct.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's acts and practices violate the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act;

B. Enter preliminary and permanent injunctive relief requiring Defendant to: 1. Immediately arrange and provide a medically appropriate powered wheelchair through inpatient processes; 2. Cease conditioning access to medical equipment or services on skilled nursing facility placement;

C. Award compensatory damages for physical injury, emotional distress, humiliation, and loss of dignity;

D. Award reasonable attorneys' fees and costs;

E. Grant such other and further relief as the Court deems just and proper.

Signed pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 15, 2025, in Worcester, Massachusetts.

/s/ Arthur Burnham

Arthur Burnham