**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARTHUR BURNHAM,<br>Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL MEDICAL CENTER, INC., and THE COMMONWEALTH OF MASSACHUSETTS, acting through the Massachusetts Trial Court, Worcester Probate and Family Court, and Registry,<br>Defendants. | Civil Action No. 4:26-cv-40002-MRG |

# PLAINTIFF'S OPPOSITION AND MEMORANDUM OF LAW IN OPPOSITION TO THE COMMONWEALTH OF MASSACHUSETTS' MOTION TO DISMISS THE VERIFIED FOURTH AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff Arthur Burnham, appearing *pro se*, opposes the Commonwealth of Massachusetts' November 18, 2026 Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), insofar as it seeks dismissal of Count III of the Verified Fourth Amended Complaint, ECF No. 48 ("FAC"). The Commonwealth asserts three grounds for dismissal: *Rooker-Feldman*, lack of Article III standing, and failure to state a claim under Title II of the Americans with Disabilities Act ("ADA") or Section 504 of the Rehabilitation Act. Each argument conflates the independent administrative-access injury pleaded in Count III with the substantive judicial orders entered in the underlying guardianship proceeding.

Plaintiff does not allege total exclusion from the Probate Court. He alleges that despite particularized disability-related notice and repeated requests for reasonable modification, the Commonwealth failed to provide meaningful access to specific filing, exhibit-intake, docketing, record-maintenance, and counsel-status services needed to establish and preserve a material documentary defense record during an active guardianship proceeding affecting his liberty and

autonomy. That failure is clearest after February 4, 2026: the Probate Court denied Plaintiff's accommodation request while referring him to appointed counsel, appointed counsel declined the next day, Plaintiff's emergency filing was rejected because “counsel must file,” additional filing restrictions followed despite renewed disability notice, and Worcester Probate staff advised counsel on February 19 that his declination apparently had not been processed. FAC ¶¶ 97–117, 125–140, 177–189; Registry Exhibits H–O.

Even assuming the February 4 order was entirely proper when entered, the subsequent administrative breakdown presents an independent federal question: whether the Commonwealth provided an effective means of accessing its existing judicial services after the identified alternative ceased to function. Neither Plaintiff's other filings nor the eventual dismissal of guardianship defeats that claim. The Motion should be denied, or alternatively, the Court should separately preserve the independently viable administrative-access components of Count III.

## II. RELEVANT FACTUAL ALLEGATIONS AND DOCUMENTARY RECORD

### A. Plaintiff's disability and the specific services at issue

Plaintiff is paraplegic and, during the relevant period, remained hospitalized and physically confined, unable to appear at the courthouse to investigate filing discrepancies, retrieve or correct documents, or reliably use ordinary printing, copying, and mailing procedures. FAC ¶¶ 22, 94–96, 168. Preparing legal documents on a computer is entirely consistent with being physically unable to print, assemble, transport, retrieve, or deliver them.

Count III challenges the Commonwealth's existing filing, exhibit-intake, docketing, record-maintenance, counsel-status processing, and reasonable-modification services. FAC ¶¶ 169–170. Plaintiff does not claim an unconditional right to electronic filing or admission of every exhibit; electronic filing and other proposed methods were means of accessing those

underlying services. The affected materials—Plaintiff's substantive Opposition to temporary guardianship, contemporaneous medical records, organized exhibit record, emergency motions, and counsel-status filings—addressed capacity, psychiatric status, wheelchair and durable medical equipment needs, guardianship timing, and less restrictive alternatives in a proceeding capable of restricting his liberty, medical autonomy, discharge, and placement. FAC ¶¶ 67–69, 170–172; Registry Exhibit B.

**B. Two documented physical filing attempts demonstrated the need for an effective alternative**

On or about January 15, 2026, Plaintiff arranged commercial printing and delivery of his Opposition and supporting exhibits to Worcester Probate and Family Court; shipment records document mailroom delivery on January 16 at 10:45 a.m., yet the Probate docket contains no identifiable contemporaneous processing entry. FAC ¶¶ 70–73; Registry Exhibit A. At the January 20 hearing, Plaintiff explained this commercial filing method and discussed Exhibit 15, and alleges the materials were located and brought before the presiding judge—allegations the Commonwealth recounts. FAC ¶¶ 74–79; Commonwealth's Memorandum ("CW Mem.") at 4. Physical possession and oral reference during a hearing, however, are distinct from docketing and preserving a complete documentary defense record.

In a second commercial submission, Plaintiff's January 22 assembly instructions directed preparation of one Probate Court copy containing five specified filings, and shipment records confirm courthouse delivery on January 23 at 11:34 a.m., again without an identifiable contemporaneous docket entry. FAC ¶¶ 80–84; Registry Exhibit D. When Plaintiff called the Registry, he recalls being told the package was returned because it was not in one envelope—an explanation inconsistent with instructions for a single court copy and one tracked shipment. FAC

¶¶ 85–87. Separately, Plaintiff transmitted his Opposition and supporting materials to UMass counsel, who acknowledged receipt in writing, corroborating their contemporaneous existence without proving Registry processing. FAC ¶¶ 88–90; Registry Exhibit E. Plaintiff does not allege that either physical-processing problem alone constituted disability discrimination, FAC ¶¶ 129–130, 172; rather, they showed ordinary physical filing was unreliable while his disability prevented ordinary in-person correction.

**C. The January 28 accommodation request provided particularized disability notice**

Plaintiff next attempted electronic filing. On January 27, submissions were rejected under an administrative one-envelope requirement, and on January 28, supporting exhibits were rejected because exhibits could not be e-filed. FAC ¶¶ 91–93; Registry Exhibits F and G. That same day, Plaintiff filed a written Motion for Reasonable Accommodation under Title II and Section 504 informing the court that he was paraplegic, confined to a hospital bed, lacked practical access to printing, copying, and postal mail, and had already incurred commercial expense attempting conventional filing. Demonstrating flexibility rather than insisting upon one preferred method, Plaintiff proposed five alternatives:

1. Electronic submission of exhibits through eFileMA;
2. Submission by email to the Clerk;
3. Attachment of exhibits to a sworn affidavit;
4. Lodging exhibits for review; or
5. Another effective procedure identified by the court.

FAC ¶¶ 94–96, 174–176; Registry Exhibit H.

**D. The counsel-based alternative failed following the February 4 judicial order**

On February 4, 2026, the Probate Court denied Plaintiff's accommodation request while referring him to the appointment of counsel. FAC ¶ 97; Registry Exhibit H. Although functioning counsel could potentially have provided an effective alternative, Attorney Jamison House expressly declined his appointment on February 5, requested replacement counsel, and asked the Probate Court to file his declination. FAC ¶¶ 98–100; Registry Exhibit I. (The Commonwealth's memorandum misidentifies this date as January 5, CW Mem. at 5; the FAC and Exhibit I establish February 5.)

On February 6, the Massachusetts Appeals Court requested a CPCS status report on counsel appointment. FAC ¶ 101; Registry Exhibit J. On February 9 at approximately 8:22 a.m., Plaintiff's emergency electronic submission was rejected with the clerk comment, "counsel must file." FAC ¶ 102; Registry Exhibit K. House's declination subsequently received a Registry RECEIVED stamp on February 9 at 11:29 a.m. and a FILED stamp on February 13. FAC ¶¶ 103–105; Registry Exhibit L. Plaintiff acknowledges the 11:29 a.m. stamp followed the 8:22 a.m. rejection and does not allege the rejecting employee necessarily knew the declination had arrived. Rather, the sequence created a closed-loop barrier: self-filing modification was denied in favor of counsel, counsel declined, no successor was functioning, and Plaintiff's submission was rejected because counsel had to file—tying filing access directly to counsel-status processing. FAC ¶¶ 100–106, 177–180.

**E. The February 17–19 sequence documents renewed notice and continuing administrative barriers**

Plaintiff sought to clarify who represented him and could file on his behalf. FAC ¶¶ 107–112, 181–182. On February 16, he transmitted an electronic submission under Envelope No. 4634821, which was rejected at 8:17 a.m. on February 17 with the clerk comment:

> "improper needs to be filed with the court directly. must include an affidavit and copy of order .. do not efile"

ECF No. 48-3, Registry Exhibit N, PDF pp. 32–35. Later that morning at 9:42 a.m., Plaintiff's sworn Renewed Motion for Reasonable Accommodation was filed, informing the court that he remained paraplegic and confined to a hospital bed, lacked printing and mailing access, had been refused printing or mailing assistance by hospital staff, and could not physically file on paper; citing the preceding rejection, he requested e-filing, email submission, or written identification of another accessible mechanism. ECF No. 48-3, Registry Exhibit H, PDF pp. 11–14.

The FAC also alleges that a separate submission sent on February 17 at approximately 1:41 p.m. was rejected on February 18 at approximately 8:01 a.m. with instructions to "file by mail or in person." FAC ¶¶ 109–112, 181–182. For clarity, the February 17 rejection reproduced in filed Registry Exhibit N and the separately alleged February 18 rejection concern different filing events; attached Exhibit N documents the former, and the FAC's reference to Exhibit N as documenting the latter requires clarification. Plaintiff does not ask the Court to treat the February 17 notice as documentary proof of the February 18 rejection. Even standing solely on the filed exhibits, the record establishes the February 17 "do not efile" rejection, the renewed accommodation motion filed that morning, and the unresolved counsel-status problem.

On February 19, Attorney House contacted Worcester Probate regarding his declination and replacement counsel, and Worcester Probate responded:

> "It does not appear the Registry has processed your declination. I am happy to forward this email to them in order to expedite the same."

FAC ¶¶ 113–115, 183; Registry Exhibit O. That contemporaneous correspondence independently corroborates that counsel-status processing remained unresolved while no effective filing alternative functioned.

**F. Subsequent proceedings and the completed access injury**

Successor counsel was later appointed, and the FAC alleges from firsthand recollection that Attorney Naomi Shelton identified counsel-appointment and representation discrepancies on the docket at the March 31 hearing; Plaintiff preserved the relevant recordings while distinguishing his recollection from what the preservation requests themselves prove, and alleges no intentional docket alteration, concealment, or conspiracy. FAC ¶¶ 118–124, 184; Registry Exhibit C. The guardianship was dismissed on March 31, 2026, and Plaintiff seeks no reversal, modification, or reinstatement of any Probate judgment. FAC ¶¶ 134–136, 190, 193–195. Finally, contrary to the Commonwealth's footnote characterizing Count II against UMass as an ADA Title V claim, CW Mem. at 1 n.1, Count II is pleaded expressly as Section 504 retaliation, and neither Count I nor Count II is asserted against the Commonwealth.

## III. APPLICABLE LEGAL STANDARDS

A Rule 12(b)(6) motion tests complaint sufficiency, not ultimate liability; the Court accepts well-pleaded facts as true, draws reasonable inferences for Plaintiff, and construes a *pro se* pleading liberally while applying governing pleading standards. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Where a Rule 12(b)(1) motion mounts a facial challenge to pleaded jurisdictional facts rather than disputing their truth, the Court likewise credits well-pleaded facts and draws reasonable inferences in Plaintiff's favor, applying the plausibility

standard to standing at the pleading stage. *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001); *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). Official records and documents central to or sufficiently referenced in the complaint may be considered without Rule 12(d) conversion. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Here, the FAC pleads concrete, dated submissions, delivery records, rejection notices, accommodation requests, and counsel correspondence—not conclusory assertions.

## IV. ARGUMENT

### A. *Rooker-Feldman* does not bar Plaintiff's independent administrative-access claim

#### *1. The governing inquiry concerns the source of the injury and the nature of the relief sought*

The Commonwealth characterizes Count III as a prohibited appeal claiming the Probate Court wrongly denied Plaintiff's accommodation motion and rejected filings. CW Mem. at 7–10. That characterization ignores the independent administrative conduct pleaded in the FAC. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court confined *Rooker-Feldman* to cases complaining of injuries caused by state-court judgments and seeking federal review and rejection of those judgments, and *Skinner v. Switzer*, 562 U.S. 521, 532 (2011), reaffirmed federal jurisdiction over independent federal claims despite related state adjudication. Most recently, *T. M. v. University of Maryland Medical System Corp.*, No. 25-197 (U.S. June 18, 2026), held that *Rooker-Feldman* applies notwithstanding available state appellate review; Plaintiff therefore does not rely on the temporary nature of Probate orders or unexhausted appeals to defeat the doctrine.

The controlling test remains whether federal relief depends upon finding a state judgment erroneous or instead redresses an independent federal violation. *See Sheehan v. Marr*, 207 F.3d

35, 39–42 (1st Cir. 2000) (separating an independent disability-accommodation claim from a challenge to an underlying state adjudication). Plaintiff accepts that *Rooker-Feldman* bars claims succeeding only if a state court was wrong. *See Mandel v. Town of Orleans*, 326 F.3d 267, 271–72 (1st Cir. 2003); *Tyler v. Supreme Judicial Court of Massachusetts*, 914 F.3d 47, 50 (1st Cir. 2019); *Efreom v. McKee*, 46 F.4th 9, 17–19 (1st Cir. 2022). Count III's independent administrative-access theory requires no such finding.

***2. The post-February 4 administrative breakdown can be adjudicated without rejecting the judicial order***

The Court may assume *arguendo* that the February 4 judicial order referring Plaintiff to appointed counsel was entirely proper when entered. That assumption does not resolve whether the identified alternative functioned after Attorney House declined on February 5, Plaintiff's emergency filing was rejected because "counsel must file," additional restrictions followed, and court personnel reported on February 19 that House's declination apparently remained unprocessed. Those post-order events raise distinct administrative questions: whether the Registry timely processed the declination, whether operational counsel status reflected available counsel, whether an effective filing mechanism existed during the gap, and whether the Commonwealth provided meaningful access after particularized notice. Adjudicating those questions leaves the February 4 order undisturbed.

Plaintiff's February 17 Renewed Motion for Reasonable Accommodation reinforces this separation. The official Probate docket in Registry Exhibit P records the renewed motion but reflects no judicial disposition of it. ECF No. 48-4, PDF pp. 6–9; *see also* Registry Exhibit H. On the available record, challenging the ensuing administrative breakdown requires rejecting no judicial order resolving that renewed request. Plaintiff seeks no order directing the Registry to

disregard a judicial directive or invalidating guardianship; the February 4 order provides factual context, not the target of federal relief.

***3. The Commonwealth's own authorities recognize the independent-claim distinction***

The Commonwealth relies upon *Sykes v. Cook County Circuit Court Probate Division*, 837 F.3d 736, 743 (7th Cir. 2016), which expressly recognizes:

> "*Rooker-Feldman* will not always bar a litigant from bringing claims against a state court for denial of reasonable accommodations."

*Sykes* applied *Rooker-Feldman* because a judicial order directly barred a service animal from the courtroom, making redress impossible without overturning that order. Here, by contrast, Plaintiff challenges the subsequent administrative failure of the mechanism referenced on February 4, which this Court may evaluate without disturbing the order itself.

The Commonwealth's remaining authorities follow the same line. *Fishman v. Massachusetts Probate & Family Court*, No. 23-cv-12459, 2023 WL 7284868, at *2 (D. Mass. Nov. 3, 2023), *aff'd*, No. 23-2042, 2024 WL 2813931 (1st Cir. Mar. 21, 2024), challenged state judicial orders terminating parental rights; Plaintiff seeks no restoration of rights by reversing a guardianship judgment. In *Howitt v. Massachusetts*, No. 24-cv-13207, 2025 WL 2146607, at *1–2 (D. Mass. July 29, 2025), adjudicating the claims required invalidating state Housing Court orders. Plaintiff recognizes that merely labeling conduct "administrative" cannot evade *Rooker-Feldman*, but the discrete post-February 4 events pleaded here—declination processing, filing rejections during a counsel gap, and renewed disability notice—are independently actionable without finding any prior order invalid. The Commonwealth's out-of-circuit cases likewise involved injuries effected directly through judicial determinations. *See Bakshi v. Bergen County Superior Court*, 687 F. App'x 215, 217 (3d Cir. 2017); *Mezzano v. Second Judicial District Court of the State of Nevada*, No. 23-cv-00324, 2023 WL 4868441, at *9 (D. Nev. July 31,

2023); *Langworthy v. Whatcom County Superior Court*, No. C20-1637, 2021 WL 1788391, at *3 (W.D. Wash. May 5, 2021). None establishes a categorical bar against independent federal claims challenging court administrative services.

#### *4. Plaintiff seeks relief for independent injury, not the consequences of an allegedly erroneous judgment*

Plaintiff seeks legally available relief solely for the independent deprivation of disability-accessible administrative services, not damages premised on a different guardianship outcome, and expressly disclaims review or modification of any Probate judgment. FAC ¶¶ 134–136, 193–195. Although Plaintiff filed his original federal complaint against UMass on January 5 before guardianship began on January 7, FAC ¶¶ 54–55, he added the Commonwealth in later amended pleadings and does not rely solely on the January 5 date—or solely on the March 31 dismissal—to defeat *Rooker-Feldman*. Rather, the independent source of injury governs. At minimum, even if a direct challenge to the February 4 denial were barred, the Court should separately preserve the independent post-order administrative-access claims rather than dismiss Count III wholesale.

### B. Plaintiff alleges a concrete, particularized, completed access injury

The Commonwealth argues Plaintiff lacks standing because guardianship was dismissed, he made other filings, and he identifies no imminent future state-court filing. CW Mem. at 10–11. That argument misapplies prospective-relief standing to a claim seeking retrospective relief for a completed deprivation. Article III requires a concrete, particularized injury fairly traceable to defendant's conduct and likely redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Unlike *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017)—a pre-enforcement suit requiring an imminent future threat—Count III pleads a completed, personal deprivation during an active liberty-restricting proceeding: the actual loss of a meaningful,

accessible opportunity to submit and preserve Plaintiff's substantive Opposition, supporting medical evidence, emergency motions, and counsel-status clarification. FAC ¶¶ 131–140, 170, 191–196.

Dismissal of guardianship does not erase that completed harm. In *Luke v. Texas*, 46 F.4th 301, 305–07 (5th Cir. 2022), the Fifth Circuit rejected the contention that a Title II plaintiff must show a separate unfavorable substantive outcome:

> "Lack of meaningful access is itself the harm under Title II, regardless of whether any additional injury follows."

Though involving different disability limitations, *Luke*'s principle applies directly here: Plaintiff need not prove the guardianship outcome would have differed to allege denial of meaningful access to specific administrative services while it remained active, and the March 31 dismissal did not retroactively supply that access. Nor does the Commonwealth's count of twenty-four other accepted filings negate the injury; the FAC expressly acknowledges partial participation while identifying specific material submissions and a counsel-gap period for which effective access was unavailable. FAC ¶¶ 131–133, 191. That injury is directly traceable to the Commonwealth's post-notice administration of those services, independent of UMass.

Plaintiff seeks compensatory damages solely for independently attributable injury to the extent legally recoverable upon proof of intent and causation, plus nominal damages where legally available. FAC ¶ 196; Prayer for Relief. Notably, *Luke* recognized the plaintiff's nominal-damages request in reversing dismissal of Title II claims, *see Luke*, 46 F.4th at 307 n.4, and an available nominal-damages remedy redresses a completed violation, *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021). Plaintiff relies on these authorities to distinguish completed injury from prospective relief and on the governing statutory framework for recoverable damages. The

FAC pleads an actual deprivation of meaningful participation—far more than a bare procedural irregularity—and establishes Article III standing.

**C. The FAC plausibly states a Title II reasonable-modification claim**

Title II bars public entities from excluding qualified individuals with disabilities from, denying them the benefits of, or subjecting them to discrimination in public services by reason of disability. 42 U.S.C. § 12132; *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000). Public entities must make reasonable modifications to policies, practices, and procedures when necessary to avoid discrimination absent fundamental alteration. 28 C.F.R. § 35.130(b)(7)(i). Failure to provide a necessary accommodation is an independent theory of Title II discrimination, governed by meaningful access rather than total exclusion. *Nunes v. Massachusetts Department of Correction*, 766 F.3d 136, 144–45 (1st Cir. 2014); *see Alexander v. Choate*, 469 U.S. 287, 301–02 (1985). Count III plausibly alleges that Plaintiff was a qualified individual eligible for the Commonwealth's judicial filing and record services who was denied a necessary reasonable modification when ordinary procedures collided with his known physical limitations. FAC ¶¶ 166–170.

***1. Plaintiff identifies the particular disability-related barrier and reasonable alternatives***

Plaintiff's paralysis and hospital confinement prevented personal use of ordinary courthouse filing and corrective procedures, and his January 28 and February 17 requests gave particularized notice of that barrier while proposing multiple flexible alternatives rather than insisting upon unrestricted e-filing. FAC ¶¶ 174–182, 187–188; Registry Exhibit H; *see Kiman v. New Hampshire Department of Corrections*, 451 F.3d 274, 283–88 (1st Cir. 2006). This Court recently applied this framework in *Washington v. Massachusetts Department of Correction*, No. 1:23-cv-10063-MRG, ECF No. 195, at 8–10 (D. Mass. July 14, 2026), denying a partial motion

to dismiss where defendants knew of the plaintiff's disability and accommodation need yet failed to provide one. *Washington* confirmed that failure-to-accommodate claims require no discriminatory animus for the underlying statutory violation and that factual questions regarding the reasonableness of alternative accommodations are ill-suited for resolution at the pleading stage. Though arising in a different institutional setting, *Washington*'s reasoning applies directly here: Plaintiff pleads particularized notice, flexible requests, failure of the counsel alternative, and rejections directing him to inaccessible filing methods.

***2. Other accessible services do not defeat the particularized claim***

The Commonwealth's Rule 12(b)(6) argument rests almost entirely on Plaintiff's twenty-four other pro se filings and his oral discussion of an exhibit at a hearing. CW Mem. at 12. That argument improperly equates partial participation with meaningful access to the specific services challenged. Reasonable accommodations must provide meaningful access to covered public services. *See Pollack v. Regional School Unit 75*, 886 F.3d 75, 80–81 (1st Cir. 2018); *Nunes*, 766 F.3d at 145. Accessing a remote hearing or e-filing text motions does not provide meaningful access to exhibit-intake, record-maintenance, counsel-status, and emergency-filing services during a period in which those routes failed. Plaintiff seeks meaningful access to existing submission and preservation procedures, not guaranteed substantive success.

***3. An identified alternative must be effective in practice***

Title II does not guarantee a preferred accommodation when another reasonable and effective option is available, but the FAC alleges that the counsel alternative referenced on February 4 ceased functioning the next day when Attorney House declined, leaving Plaintiff blocked by “counsel must file” and “do not efile” rejections while House's declination apparently remained unprocessed through February 19. The issue is whether that alternative actually

provided meaningful access during the gap, not whether appointed counsel works in theory. The Commonwealth has not shown from the face of the FAC that every proposed alternative was unreasonable or a fundamental alteration; as in *Washington*, the effectiveness and reasonableness of alternatives present factual questions unsuitable for Rule 12(b)(6) dismissal.

**D. The FAC separately pleads the requirements of Section 504**

Section 504 bars disability discrimination in federally funded programs or activities. 29 U.S.C. § 794. Registry Exhibit Q—an official FY2026 Trial Court budget record—documents federal Trial Court funding, including $71,477 under Line Item 0333-0123 for "Guardianship: Helping Vulnerable Adults Explore Alternatives to Traditional Guardianship," directly supporting the federal-funding predicate. FAC ¶¶ 141–142, 167, 186; ECF No. 48-4, PDF pp. 16–17.

The Commonwealth cites *J.S.H. v. Newton*, 164 F.4th 142, 152 (1st Cir. 2026), for Section 504's "solely by reason of disability" requirement. *J.S.H.* affirmed summary judgment after a developed evidentiary record failed to show the asserted denial of services, assuming without deciding that loss of meaningful access could support a Section 504 claim. Here, by contrast, Plaintiff pleads documented filing rejections, failure of the counsel alternative, particularized accommodation requests, and unresolved counsel-status processing at the Rule 12 stage. Plaintiff does not contend ordinary filing rules or outages were caused by disability; the discriminatory deprivation is denying effective modification necessitated solely by the functional consequences of his paralysis and physical confinement. FAC ¶¶ 175–176, 185–186. At minimum, any issue unique to Section 504 must be evaluated separately and cannot dispose of Plaintiff's Title II claim.

**E. Plaintiff alleges intentional discrimination and limits relief to legally available remedies**

Although the Commonwealth does not challenge Plaintiff's intent allegations, the FAC alleges more than isolated clerical error or negligence. Compensatory damages under Title II and Section 504 require intentional discrimination. *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 125–26 (1st Cir. 2003). Repeated written disability notice, flexible modification proposals, failure of the counsel alternative, affirmative filing rejections, corroborated unresolved processing of counsel's declination, and repeated corrective opportunities plausibly support the pleaded intentional-discrimination theory. FAC ¶¶ 125–130, 137–139, 187–189. Plaintiff limits all requested relief to categories legally recoverable upon proof of intent and causation. FAC ¶ 196.

**F. The FAC addresses the applicable sovereign-immunity framework**

Although the Commonwealth has not raised sovereign immunity in this Motion, Title II expressly abrogates state sovereign immunity, 42 U.S.C. § 12202, and *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004), upheld that abrogation for claims implicating the fundamental right of access to the courts. The First Circuit applied *Lane* to a qualifying state judicial-access claim in *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 5–6 (1st Cir. 2004), while noting the separate need to evaluate other jurisdictional limits. Count III implicates meaningful access to judicial administrative services in a guardianship affecting fundamental liberty and autonomy interests. For Section 504, Plaintiff relies on the statutory waiver for federal-funding recipients under 42 U.S.C. § 2000d-7, supported by Registry Exhibit Q.

**G. Alternatively, the Court should preserve independently viable components of Count III**

If the Court concludes that any aspect of Count III impermissibly challenges a state judicial order, it should separately preserve the independent post-February 4 counsel-status and

administrative-access allegations, which require rejecting no judicial ruling. If any jurisdictional factual dispute requires evidence beyond the pleadings, Plaintiff requests appropriately limited jurisdictional factual development. Finally, if the Court identifies a specific curable pleading deficiency, Plaintiff requests leave to amend under Rule 15(a)(2) rather than dismissal with prejudice, and any dismissal for lack of subject-matter jurisdiction must be without prejudice.

## V. CONCLUSION

Count III pleads far more than dissatisfaction with Probate orders or isolated clerical error: it alleges documented delivery problems, particularized disability notice, flexible accommodation requests, failure of the counsel alternative, affirmative filing rejections, renewed notice, and corroborated unresolved processing of counsel's declination. Neither Plaintiff's other filings nor the eventual dismissal of guardianship defeats that independent federal claim.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. DENY the Commonwealth's Motion to Dismiss Count III of the Verified Fourth Amended Complaint;
2. Alternatively, separately evaluate and preserve the independently viable administrative-access and reasonable-modification theories;
3. Permit appropriately limited jurisdictional factual development if necessary;
4. Permit limited amendment if the Court identifies a specific curable pleading deficiency; and
5. Grant such other relief as the Court determines just and appropriate.

This Opposition does not seek adjudication of the distinct claims against Defendant UMass Memorial Medical Center, Inc., pleaded in Counts I and II.

Respectfully submitted,

/s/ Arthur Burnham
Arthur A. Burnham
Plaintiff *Pro Se*
CM/ECF Registered Filer
Telephone: 774-757-8772
Email: standupinfaith12@gmail.com

Date: November 26, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date entered below, I filed a true and correct copy of the foregoing Opposition and Memorandum of Law through the Court's CM/ECF system, which provides electronic notice to registered counsel of record.

/s/ Arthur Burnham
Arthur A. Burnham
Plaintiff *Pro Se*

Date: November 26, 2026